IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN MOYA,

        Plaintiff,

vs.                                                 No. Civ. 98-1539 SC/JHG

AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, a national labor
union, LUIS ARELLANO, and EVELINA MARQUEZ,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on (1) Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment on, Plaintiff's State Law Tort Claims, filed October 7, 1999 [Doc. No. 38]; and (2) Plaintiff's Agreed Motion to Dismiss Americans with Disabilities Act Claim, filed January 10, 2000 [Doc. No. 53]. The Court has read the motions and memoranda and is apprised of the applicable law. For the reasons set forth below, the Court concludes that Defendants' motion to dismiss is either not well-taken or moot and that Plaintiff's motion to dismiss will be granted.

**I.    BACKGROUND**

Plaintiff alleges violations of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (Count I). Plaintiff also brings state law claims of intentional infliction of emotional distress (IIED) (Count II) and prima facie tort (Count III). Counts

I and III are against all Defendants. Count II is against Defendants American Federation of State, County and Municipal Employees (AFSCME) and Marquez.

Plaintiff is a union representative for Defendant AFSCME. During the relevant time of this action, Plaintiff was suffering from health problems (including a seizure disorder, gastroesophageal reflux disease, sleep apnea, and anxiety and panic disorder) and from financial problems (which caused him to file for Chapter Seven bankruptcy protection in 1998). Defendants allegedly were aware of Plaintiff's health and financial ills. Plaintiff contends that Defendants retaliated against him for contacting state and federal law enforcement officers in 1997 about illegal activities of Defendants. Plaintiff further alleges that Defendants refused to make reasonable accommodations for his health problems and retaliated against him because of those health problems. The retaliatory action included banning Plaintiff from New Mexico by requiring him to travel to assignments in such places as Puerto Rico and Florida, increasing his workload, docking a paycheck by 60 percent in March 1998, billing a rental car fee directly to him in April 1998, and delaying payment of expense money that was due him. Plaintiff also alleges that on February 21, 1997, he suffered a seizure at the AFSCME Santa Fe office, that Defendant Marquez was present and witnessed the seizure and not only refused to render aid, but as he was taken to the hospital on a stretcher, she placed a suspension notice on his stretcher.

Defendants move to dismiss, or for summary judgment on, the IIED claim against Defendant AFSCME and the prima facie tort claim against all three Defendants.

Defendants assert that the grounds for dismissal of, or summary judgment on, the IIED claim are that (1) Plaintiff has failed to state a claim and (2) the claim is preempted by § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a). They assert that the ground for dismissal of, or summary judgment on, the prima facie tort claim is that the claim is preempted by § 301.[1] In addition to these explicit grounds, Defendants have embedded in footnotes or in the text of the above arguments further bases for their motion. These additional contentions are that (1) Plaintiff has failed to state a claim for prima facie tort as to the individual defendants, and (2) Plaintiff's federal ADA discrimination claim against the individual defendants should be summarily dismissed.

## II.     LEGAL STANDARD

Defendants' motion to dismiss appears to be pursuant to Fed. R. Civ. P. 2(b)(6), dismissal for failure to state a claim upon which relief can be granted. I did not consider the collective bargaining agreement attached as an exhibit to Defendants' motion when deciding the motion. I, thus, need not convert the motion to dismiss to a motion for summary judgment. See Lowe v. Town of Fairland, Okla., 143 F.3d 1378, 1381 (10th Cir. 1998)

---

[1] Although in their supporting Memorandum Defendants assert their prima facie tort- preemption argument only as to Defendant AFSCME, in their Reply they contend that the prima facie tort claim is preempted as to all three Defendants. I will construe Defendants' contention as against all three Defendants.

3

Granting a motion to dismiss for failure to state a claim "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 586-87 (10th Cir. 1994) (internal quotations omitted); see Ayala v. Joy Mfg. Co., 877 F.2d 846, 847-48 (10th Cir. 1989). When ruling on a Rule 12(b)(6) motion, a court must construe the plaintiff's complaint liberally and all well-pleaded allegations in the complaint must be accepted as true. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998). A claim may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989).

## III. INSUFFICIENCY OF STATE LAW CLAIMS

### A. IIED Claim

Defendants contend that the alleged conduct underlying Plaintiff's IIED claim against Defendant AFSCME, even if true, is not sufficiently atrocious to be actionable. Additionally, Defendants contend that Defendant AFSCME was legally authorized to engage in the alleged conduct and, thus, cannot be held liable for such conduct.

"Intentional infliction of emotional distress arises when a defendant intentionally or recklessly causes severe emotional distress through extreme and outrageous conduct." Jaynes v. Strong-Thorne Mortuary, Inc., 124 N.M. 613, 618, 954 P.2d 45, 50 (1997); see

4

Dominguez v. Stone, 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct. App. 1981). Extreme and outrageous conduct is conduct "which goes beyond [the] bounds of common decency and is atrocious and intolerable to the ordinary person." Jaynes, 124 N.M. at 618, 954 P.2d at 50 (internal quotations omitted). The resulting emotional distress must be such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." Id. (internal quotations omitted); see Dominguez, 97 N.M. at 214-215, 638 P.2d at 426-27. Although the standard for proving extreme and outrageous conduct and severe emotional distress is rigorous, if the court determines that reasonable minds could differ in regards to the outrageous nature of the alleged conduct, the claim may not be decided on a motion to dismiss. See Heimann v. Snead, No. 96-2266, 141 F.3d 1184, 1998 WL 184447 at *5 (10th Cir. Apr. 17, 1998) (unpublished disposition) (citing Restatement (Second) of Torts § 46 cmt. h).

Presuming Plaintiff's allegations against Defendant AFSCME to be true, and viewing them in the light most favorable to Plaintiff, I conclude that Plaintiff has met the threshold for stating an IIED claim. Intentionally causing physical and financial harm to a person already drowning in such problems could be regarded by some reasonable minds as conduct unacceptable in a civilized society – especially when such conduct is retaliatory. Further, although this element is not explicitly challenged by Defendants, reasonable minds could differ on whether the resulting emotional or mental distress to Plaintiff by such alleged conduct would be unbearable to a reasonable person.

B.     **Prima Facie Tort Claim**

Defendants contend that Plaintiff's prima facie tort claim against Defendants Arellano and Marquez must be dismissed because, under New Mexico law, supervisors cannot be liable in tort for acts done within the scope of their employment. (Instead, the proper defendant is the supervisors' employer – here, Defendant AFSCME.)  In support of their contention, Defendants cite Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 437, 872 P.2d 852, 855 (1994).

Defendants misconstrue Bourgeous.  First, narrowly construed, the holding in Bourgeous regarding the non-tort liability of supervisors is limited to the context of retaliatory discharge.  See Bourgeous, 117 N.M. at 437-38, 872 P.2d at 855-56; see also Stinson v. Berry, 123 N.M. 482, 487, 943 P.2d 129, 134 (Ct. App. 1997).  Second, even read broadly, Bourgeous applies only to cases in which there is no evidence that the supervisor's alleged conduct was malicious, willful, or wanton.  See Bourgeous, 117 N.M. at 437-38, 872 P.2d at 855-56.  The Bourgeous court specifically noted that it was "mindful that officers or employees of corporations can be held personally liable when they commit intentional torts." Id. at 437, 872 P.2d at 855.[2]

---

[2] The Bourgeous court conflated conduct performed within the scope of employment with non-malicious, non-willful, or non-wanton conduct. However, the Bourgeous court clearly did not intend that an individual's malicious, willful, or wanton conduct (or conduct otherwise underlying an intentional tort) be immune from liability.  What was essential to the court's conclusion was not that the conduct at bar was performed in the scope of employment, but that it was not done maliciously, willfully, or wantonly.

Prima facie tort is an intentional tort.[3]  Thus, Defendants Arellano and Marquez are amenable to suit on such a claim, as is their employer, Defendant AFSCME.

## IV. SECTION 301 PREEMPTION - "STRUGGLING THROUGH THE THICKET"[4]

### A. Background and Principles

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  As construed by United States Supreme Court caselaw, § 301 preempts any state law claim alleging violation of a collective bargaining agreement or requiring for its resolution an interpretation of the terms of such an agreement.  See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988); Allis-Chambers

---

[3] "Prima facie tort occurs when a lawful act is conducted with an intent to injure and without sufficient economic or social justification, resulting in injury."  Lexington Ins. Co. v. Rummel, 123 N.M. 774, 777, 945 P.2d 992, 995 (1997); see Schmitz v. Smentowski, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990).  In deciding whether intentional conduct was justified or not, a court must balance the conduct complained of against the justification for the act and the severity of the injury.  See Schmitz, 109 N.M. at 394-95, 785 P.2d at 734-35.

[4] Mark L. Adams, Struggling through the Thicket: Section 301 and the Washington Supreme Court, 15 Berkeley J. Employment & Lab. L. 106, (1994).  As Adams recites, the issue of state law preemption under § 301 has been described as a "thicket," "a tangled and confusing interplay between federal and state law," and "one of the most confusing areas of federal court litigation."  Id. at 107 (internal quotations omitted).

Corp. v. Lueck, 471 U.S. 202, 210, 220 (1985); see also Albertson's, Inc. v. Carrigan, 982 F.2d 1478, 1480 (10th Cir. 1993).

Although on its face the preemption test appears straightforward, its application is far from facile – as illustrated by the contradictory caselaw and the numerous law review articles on the issue of § 301 preemption.[5] The lack of crisp rules of engagement result not only from the fact-dependant and state-law dependant nature of the preemption analysis, requiring a case-by-case review, but also from the differences in views about the breadth of § 301 preemption. I examine the challenged state law claims with the below standards and principles in mind.

"[P]re-emption should not be lightly inferred . . . , since the establishment of labor standards falls within the traditional police power of the State." Lingle, 486 U.S. at 412 (internal quotations omitted). The focus of a court's preemption analysis must be "whether evaluation of the tort claim is inextricably intertwined with," or "substantially dependent" upon interpretation or construction of the collective bargaining agreement. Allis-Chalmers, 471 U.S. at 213, 220. A mere tangential relationship between the state

---

[5] For a detailed discussion of the scope of § 301 preemption and citation of caselaw, see Adams, supra note 4; Richard A. Bales, The Discord Between Collective Bargaining and Individual Employment Rights: Theoretical Origins and a Proposed Reconciliation, 77 B.U.L. Rev. 687 (Oct. 1997); Laura W. Stein, Preserving Unionized Employees; Individual Employment Rights: An Argument Against Section 301 Preemption, 17 Berkeley J. Employment & Lab. L. 1 (1996); Rebecca Hanner White, Section 301's Preemption of State Law Claims: A Model for Analysis, 41 Ala. L. Rev. 377 (Winter 1990); Stephanie Marcus, Note, The Need for a New Approach to Federal Preemption of Union Members' State Law Claims, 99 Yale L.J. 209 (Oct. 1989); William L. Christopher, Survey, McCormick v. AT&T, Inc. and Section 301 Preemption: The Fourth Circuit Makes a Federal Case Out of Workplace Torts, 70 N.C.L. Rev. 2073 (Sept. 1992); Gregory G. Sarno, Annotation, Pre-emption, by § 301(A) of Labor-Management Relations Act of 1947 (29 U.S.C.A. § 185(A)), of Employee's State-Law Action for Infliction of Emotional Distress, 101 A.L.R. Fed. 395 (1991).

law claim and the agreement is insufficient.  See id. at 211, 220; see also Lingle, 486 U.S. at 410 n.10, 413 & n.12.  Moreover, an independent state law claim and a collective bargaining agreement grievance based on the same facts are not mutually exclusive. "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts," § 301 preemption is not required so long as the state law claim is independent of the agreement.  Lingle, 486 U.S. at 409-10; see id. at 412-413; Albertson's, 982 F.2d at 1482-83.

Whether a state law claim is preempted turns on the source of the alleged duty violated – i.e., whether it arises from state law (or another independent source, such as an individual contract) or from the terms of the collective bargaining agreement.  See Lingle, 486 U.S. 407-10; Allis-Chalmers, 471 U.S. at 212-13.  Furthermore, whether a state law claim relies (factually) on the meaning of a collective bargaining agreement provision depends on the elements or state law construction of that particular state law claim.  See Allis-Chalmers, 471 U.S. at 216-17 (under Wisconsin law, tort of bad faith handling of insurance claim intrinsically relates to duties established by contract); Mock v. TG & Y Stores Co., 971 F.2d 522, 530 (10th Cir. 1992) (under Oklahoma law, tort of IIED does not create an independent method of measuring outrageousness of employer's conduct, but must be considered in relation to terms of the collective bargaining agreement); Johnson v. Beatrice Foods Co., 921 F.2d 1015, 1020, 1021 (10th Cir. 1990) (same as Mock).

9

Finally, where a state law claim depends "for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement[,] . . . federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." Lingle, at 413 n.12. For example, a "collective bargaining agreement may . . . contain information such as rate of pay and economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state law claim not otherwise preempted, would stand." Id. (citation omitted).

**B.     Discussion**

Plaintiff describes his IIED and prima facie tort claims as independent of the collective bargaining agreement. To prevail on his IIED claim against Defendant AFSCME, Plaintiff must show that Defendant AFSCME's conduct (in forcing him to travel or relocating him, increasing his workload, docking a paycheck by 60 percent in March 1998, billing a rental car fee directly to him in April 1998, and delaying payment of expense money that was due him) was extreme and outrageous, that Defendant AFSCME acted intentionally or recklessly, and that Defendant's conduct resulted in severe emotional distress.[6] To prevail on his prima facie tort claim against all three

---

[6] It is unclear from the Amended Complaint and the pleadings, whether Plaintiff is alleging that the February 21, 1997, incident involving Defendant Marquez and her placing of a suspension notice on

Defendants, Plaintiff must prove that Defendants intentionally injured him by their (lawful) conduct and without sufficient justification. The conduct at issue includes the conspiracy by Defendants Marquez and Arellano to ban Plaintiff from working for AFSCME in New Mexico and requiring him to travel to locations distant from New Mexico.

Defendants §301 preemption theories are that (1) elements of Plaintiff's state law claims depend on interpretation of the collective bargaining agreement and (2) their defense to Plaintiff's state law claims require an examination of the collective bargaining agreement. The essence of Defendants' defense is that their actions were in compliance with provisions of the collective bargaining agreement and no duties owed by Defendants to Plaintiff were violated. Thus, their conduct could not be considered outrageous or unjustified.

I agree with Plaintiff that his state law claims against Defendants are not preempted under § 301. Looking at the elements of each of the tort claims under New Mexico law, there is no need for interpretation of the terms or provisions of the collective bargaining agreement. Unlike the case in Allis-Chalmers, Mock, or Johnson, the elements of the claims are not intrinsically wrapped up with the agreement. Proof of these two claims instead are factual questions pertaining to the conduct and motivation of

---

Plaintiff's stretcher underlies only his IIED claim against Defendant Marquez or whether he is alleging that it also underlies his IIED claim against Defendant AFSCME under the doctrine of respondeat superior. It is also unclear whether this allegation underlies Plaintiff's prima facie tort claim.

11

Defendants and the effect of that conduct on Plaintiff. See Lingle, 486 U.S. at 407; Albertson's, 982 F.2d at 1482.

Stated another way, neither Plaintiff's IIED claim against Defendant AFSCME nor his prima facie tort claim against all three Defendants is based on duties arising from the collective bargaining agreement. The duty allegedly violated is not the duty to pay or not to relocate (or force travel) but the duty owed to all citizens under New Mexico law not to intentionally injure. Cf. Torres v. El Paso Elec. Co., __ N.M. __, __, 987 P.2d 386, 402 (1999) (New Mexico has a "strong public policy . . . disfavoring unjustifiable, intentional wrongs that cause harm to others.") (citing Coleman v. Eddy Potash, Inc., 120 N.M. 645, 649, 905 P.2d 185, 189 (1995)). Axiomatically, then, the source of the duty is not, as Defendants allege, any provision in the collective bargaining agreement concerning payment of expenses or travel/relocations, but state law concerning intentional, injurious conduct.

Further, even if a reference to the agreement may be required here, this is not equivalent to the conclusion that the claims are "substantially dependent" on interpretation of the agreement for resolution or that they are "inextricably intertwined" with the agreement. As the Supreme Court has reiterated, "not every dispute . . . tangentially involving a provision of a collective-bargaining agreement," Allis-Chalmers, 471 U.S. at 211 (quoted in Lingle, 486 U.S. at 425 n.12), nor "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement . . . is preempted by § 301," id. at 220. Moreover, that Plaintiff may have a

12

grievance under the agreement for the expense payments or the travel/relocations is insufficient to conclude that the state law claims are preempted. See Lingle, 486 U.S. at 408-10 (possibility that Lingle had contractual claim under agreement for firing without just cause does not mean that her state claim for retaliatory discharge was dependant on the agreement and preempted).

Therefore, because Plaintiff's IIED and prima facie tort claims are based on state law duties owed to all New Mexico citizens, and any potential reliance on the collective bargaining agreement in resolving such claims would be insubstantial or tangential, I will deny Defendants' motion to dismiss Plaintiff's state law claims on the basis of § 301 preemption.

## V.  ADA CLAIMS

Plaintiff has filed a stipulated motion to dismiss his ADA claims as to all Defendants. I, therefore, will not address Defendants' contentions concerning Plaintiff's ADA discrimination claim against Defendants Arellano and Marquez nor will I address Plaintiff's ADA retaliation claim against these Defendants. Consequently, Count I of Plaintiff's Amended Complaint will be dismissed with prejudice as to all Defendants.

**NOW, THEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment on, Plaintiff's State Law Tort Claims, filed October 7, 1999 [Doc. No. 38], should be and hereby is DENIED as to Plaintiff's state

13

law tort claims and DENIED AS MOOT as to Plaintiff's ADA discrimination claim against Defendants Arellano and Marquez.

**IT IS FURTHER ORDERED** that Plaintiff's Agreed Motion to Dismiss Americans with Disabilities Act Claim, filed January 10, 2000 [Doc. No. 53], should be and hereby is GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs: Daniel M. Faber, Albuquerque, New Mexico

Counsel for Defendants: Jerry Todd Wertheim, JONES, SNEAD, WERTHEIM, WENTWORTH & JARAMILLO, Santa Fe, New Mexico; Gloria Peele Clement and Margaret A. McCann, AFSCME AFL-CIO, Washington, D.C. (Defendant AFSCME only); and W. Gary Kohlman and Alice O'Brien, BREDHOFF & KAISER, PLLC, Washington, D.C.